Okay, thank you, your honors. I'd like to start off just spending maybe a minute just with a little bit of background, because I think it's, it's relevant to the issues at hand. This is a situation where we have three employees who elected to start a business and compete with their, with their ex employer. In this case, it's especially egregious, because that competition began before they even left the employment of their employer, the appellant here today. So seven months before they even left the employment, while they were still being paid, while they were still getting benefits, they had actually formed a competing business and were actually directing customers of their employer to their own business. And why it's important is, of course, because it shows that these particular employees and appellees had unclean hands, which certainly goes into the issue of whether or not, when we balance the equities with respect to the winner factors for preliminary injunction, that is one of the things that the court can look at if you need to, if those balance of equities are close, and we have one party with unclean hands, as we do in this case, that can tip the balance in favor of the other party. So I think it's relevant just for the court to know that. And now I'll move into the kind of the two issues that were in front of the court. One is the Uniform Trade Secret Act of Nevada, and the question there is whether or not the district court construed the statute correctly when they were addressing the issue of whether or not defendants had in fact misappropriated trade secrets. And if you look at the transcript, and there are certainly portions that we highlighted in our opening brief, the court seemed to struggle with whether or not methods and processes could in fact be trade secrets, and the court consistently went to the question and tried to compare it to or make it analogous to a doctor or an attorney who might leave a practice and go start their own practice, and indicating that, you know, that's just taking my knowledge that I've learned while being at the practice and then starting my own business. And I don't disagree with that, and I didn't disagree with it at the hearing. The point is, there are also situations where your employer can develop things that are confidential in nature and trade secret in nature that might be methods. And one of the analogous situations I gave him responsive to his doctor analogy was, well, yes, if you're working for a doctor, and you go start your own practice, you can certainly continue to be a doctor. But if you did learn something while with the doctor that was a trade secret, for example, a method of performing a procedure or some other trade secret that that doctor had developed, you certainly couldn't take that with you, in violation of the statute. And the court just couldn't, to me, couldn't wrap its head around the fact that the information that we had provided the court under seal with respect to certain processes that had been developed by appellants, the court just couldn't get to the point of understanding how that could be trade secret. I took a look at that information that was filed under seal. And to be forthright with you, it is difficult to wrap one's head around what is the trade secret. And are you suggesting it's because you don't understand the technology or because you've looked at it, and you don't think it actually is a trade secret, and that's information that's already available to the public? More the latter. Correct. And there's law, and it was cited, I believe, in our reply brief that talks about taking a mixture of material that is publicly known and putting it together with new information, and that compilation will then, in fact, be a trade secret. And we make that mention in one of our briefs, that we don't stand here today and pretend like we came up with something completely out of the sky. The point is that we've added procedures to that process that is different than what's being done in the public, and that's why we consider the whole compilation a trade secret. Okay. Well, again, if you might have something that's, there's some information of a particular process that you find in the public, but by changing it or improving it or adding steps to it, you, in fact, still have a trade secret with the whole compilation. So let me ask you this. Did the district court make an error of law in saying this did not qualify as a trade secret, or was it not, or was it that he misconstrued the evidence? Or she, I forget who it was. I believe he misconstrued the evidence, but I don't believe we even got to the point of truly analyzing whether or not the process or methods were trade secrets. It was more along the lines of the court not even reaching that position, or saying, hey, methods and processes, you just can't have these as trade secrets under the Act, despite the fact that the Act has expressed that you can. So we really never got into the issue of whether or not the process itself was, in fact, a trade secret. The court really never delved into that. There was another issue here, the non-compete clauses. Yes, so into the non-compete clause. So what we have here is a non-compete that was signed by all the defendants. There's no disputing that it was signed. There's no dispute that they agreed to it. The dispute comes in, of course, is whether or not the clause was too restrictive. And we argued in our motion for a preliminary injunction that it wasn't too restrictive, given the geography standpoint, given that this is an internet business, and you could work on any clients from anywhere in the country. You're not limited to Clark County, for example. And so we come to this issue with respect to, can the court modify the non-compete agreement under the statute? And can they blue pencil the agreement? So I think one interesting fact is that we spent a lot of time during the hearing on the preliminary injunction actually talking about, with the court, how we might modify that agreement to the satisfaction of both parties. So initially the court had mentioned that they would be willing to enter an injunction that would prevent defendants from contacting appellant's customers in Clark County. Now, we didn't accept that or agree to it because it wasn't going to protect our client. We then offered to the defendants in front of the court that, well, they can continue to do what they're doing, that is search engine optimization, as long as they don't do it with respect to real estate companies and home-based businesses, because that is what we focus on, we being the appellant. And, of course, defendants predictably didn't want to do that because it was too restrictive. The point is that during the hearing, we were actually talking about different ways that we might be able to modify that non-compete provision to make it satisfactory for the client. So there's no doubt that the district court was willing to do that. They didn't ultimately do it, unfortunately, because I guess they didn't feel like they had to, but under the statute, of course, that we have in our briefing, the supplemental briefing, they're obligated to do that, but they didn't do that. Counsel, excuse me, you indicated that you kind of went by this part, but the fact of whether or not these agreements for non-compete were overbroad, initially they were for two and three years, correct? Yes, correct. But in oral argument, you were willing to limit them down to just one year, correct? That is correct. And the reason for that is because you believe they were overbroad as well? I certainly thought we would have a tougher time for the court to agree that two and three years was going to be not too restrictive, certainly. So a three-year non-compete for anywhere in the world would be overbroad, correct? I would agree with that, certainly. Okay, thank you. Sure. So I think kind of in conclusion, when you look at all the factors... Let me ask you this, the parties were unable to agree to their own modification of the non-compete clauses, so what gave the court the authority to blue pencil? Well, it's the statute of the clause. NRS 613.195, subsection 5, which compels the court to blue pencil an agreement that can be blue penciled and make it not too restrictive on the party that signed the agreement. Doesn't that result in a substantive modification of the agreement, which would make it under Nevada law non-retroactive? Well, we briefed the retroactivity of the statute, and again, Nevada, before the statute was enacted, and that was enacted just recently, Nevada had a history of blue penciling agreements and often did it, including the Supreme Court of Nevada. What happened is once they passed this... Once the Supreme Court of Nevada decided... A seminal case slips my mind, but they decided the case that basically said you couldn't blue pencil these agreements, they would have to be deemed unenforceable. Then the legislature quickly jumped in and passed the statute and put Nevada back into the spot they were before. That is, into a situation where the court, in this case, is compelled to blue pencil the agreement. So the Nevada Supreme Court has yet to decide this issue, right? That is correct. They had the hearing on November 10th. With respect to this retroactivity issue, we still haven't had a ruling on that. Okay. Did you want to save some time for rebuttal? Okay, yes, please, if I have any. Okay. I'll add a minute to your 30 seconds. We have a minute and 30 seconds for rebuttal. Thank you, sir. Let's hear from the other side. Yes, good morning. May it please the court. Stan Johnson on behalf of the appellees. I think initially the key issue is what was before the court at the time the court denied the preliminary injunction. And what was before the court was really no evidence that indicated that any of these processes that were alleged to be trade secrets were in any way not generally known or not readily ascertainable, which is the standard under the Nevada trade secret statute. And that's what the court kept talking about. The court kept saying, well, what is it about this process or these processes that make them a trade secret? I think it's misleading when the when the argument is made that the court did not understand that a process could be a trade secret. I don't think there's any doubt that the court understood that. But what was difficult for the court to grasp and what the court kept asking about was, okay, you have a process. Why is that process a trade secret? Not all processes are trade secret. In fact, the court was trying to use an example, which I think is is quite applicable, which is if I am an attorney and over a period of years, I develop a process. I go through when I'm writing a brief or doing other functions and I do certain things in a certain order and I check certain references and I do certain things. That's a process. But that doesn't mean it's a trade secret. If that was to be a trade secret, I would have to show why what I'm doing is not generally known. And there is nothing about what the plaintiff was alleging that was not generally known or readily ascertainable. When we look at what was submitted under Exhibit B and C and D, it's just general information. It's using Google. It's using different searches. It's using keyword generators, key phrase generators. These are all things that are generally known and used in the SEO industry. So let me ask you this, just on this issue. Isn't it possible to take commonly known information, information that's common out there in the public, and combine them in a unique way to develop a process that nobody else has come up with? Yes. Theoretically, the case law does indicate that that's possible. Is that what happened to you? No, I don't believe it is. The key factor, I think, is that they never demonstrated, and remember, well, the court knows, it was their burden to provide evidence sufficient that the court could make a determination whether they were likely to prevail on the merits. And the court found they were not likely to prevail on the merits because they could never identify what made the process a trade secret. And that's what the court kept asking about. In fact, in the court's order, the court said, the court finds that plaintiff in response highlights the prevalence of keyword selection, content writing, utilizing keywords, website creation, certain other SEO techniques, and tracking results in the SEO industry. However, plaintiff has not demonstrated how any of its processes or techniques significantly differ from those generally employed by the SEO industry. And so that's, I mean, the court was specifically aware of the fact that a process potentially could be a trade secret. But what plaintiff or appellant is actually really arguing is they're saying, well, we have a process. Therefore, it's a trade secret because we say it is. And that's what the court kept asking about is, OK, you have a process, but why is it a trade secret? And I think that's the key thing. There was never any evidence presented that that was the case. In fact, there was no evidence presented that the defendants had actually misappropriated the trade secrets or were using the trade secrets. There was no evidence of that either, which would be another factor that they would have to demonstrate in order for the court to grant the preliminary injunction. The other issue I think is important. That the declarations that were submitted were not that there was a use of this process as a trade secret, but they were declarations and they were hearsay secondhand of certain customers who had said, well, they kind of used the same sales pitch when they talked to me. That's what the declarations talked about. They never said, oh, yeah, they took this information and they used it with a key phrase generator or key word generator and did this and this and this and this, which would have demonstrated that they were in some way using this process. They didn't even introduce that evidence. And so that's why the court ruled the way it did in regards to the likelihood of prevailing on the merits. I'll just quickly touch on irreparable harm. There was also no evidence of irreparable harm. If certain clients were taken from the plaintiff, they could have indicated which ones, what amount was lost due to this and that could have been remedied by monetary damages. So that was another factor, I think, that was not proven. The other thing we should get into, of course, is NRS 613.195. And here, the key issue, of course, and the court identified it and asked for supplementary briefing, is the retroactivity of the statute. And I think the court already brought this up by pointing out that, yes, if you modify the contractual rights of the parties, this is a substantive statute, not a procedural statute. And that's very clear, I think. And the case we cited, which is one that was decided by the Nevada Federal District Court, was Pazup Ranch v. Martin, which was decided in 2020. And what the court said in its decision is there's nothing in the legislative history or the statute that would indicate retroactivity, given the fact that the legislature clearly wanted to overturn the holding in Golden Road. If they wanted that to apply retroactively, they would have said so. So there was an argument on this issue before the Nevada Supreme Court. Should we at least wait to see their decision before we do anything with this case? Well, I guess there is that pending. But I think the key issue is at the time this court looked at the issue, what was the law? And the law and what was in front of the court was nothing that showed that the statute was retroactive. And the court wasn't offering the really blue line, the agreements. That never really came up. What the court was doing is saying, look, can you guys agree to certain restrictions? Because in the court's mind, these restrictions that were in the covenants were clearly too broad and unenforceable. And so the court was merely trying to offer a broker some sort of resolution that the parties would agree to. But the court never indicated, you know, I'm going to blue line this agreement pursuant to 613.195. And in fact, we argue in our supplement that that was waived because the first time that statute was actually brought up was in the opening brief. And I think the record's clear that the appellants never said, OK, judge, because of that statute, you have to blue line this. That never came up. So we do also think that that was waived. So I guess my time's up. But in conclusion, I would urge the court to look at what was before Judge Mahan at that time, which was virtually no evidence presented by the plaintiffs that would allow them to say we're going to prevail. We have a likelihood of prevailing on the merits or that 613.195 should be applied. That was never argued and there was no evidence of that before the court. Thank you. OK, thank you, counsel. Your Honors, just a brief rebuttal. I'd like to just as far as the. Let me make sure I want you to see me. You know, we're all good. We can see you. OK, so in a brief rebuttal, I'd like to just say regarding the trade secret arguments made by opposing counsel. I think there are two really telling comments by the by the district court that that show that the court was grappling with this idea. And one of those is these are both the opening brief. This one is to record 98. And it's the court said, what is the trade secret? Well, that's still developing. I can't say here's the definition. Well, there is a definition and it's under the Nevada Uniform Trade Secrets Act. So that question kind of, you know, right out of the chute started making me believe that the court was struggling with this issue. And then secondly, there's a there's another statement by the court later in the in the hearing. And this is to exert record 138 from using your trade secrets. And and and how can I tell how can I say, oh, the method you're using, you're violating the trade secret. How now, how am I going to police that? So, again, the court had an issue with the method and how they might police the issue. And in the hearing, you know, I understood that there was a there might be a difficulty in policing it. But certainly that is not the standard for determining whether or not something is a trade secret. Oh, your time is just about over. OK. And the last thing is just with respect to the the hearing and the blue penciling is that the court when we walked in, the court had already mentioned right out of the chute that they were inclined to grant the injunction and that they were going to limit it to Clark County. And that's before any more argument was made. So it wasn't as though the court was trying to broker something. The court had actually decided when we walked into that hearing that they were willing to blue pencil that agreement. So and that's on the first page of the transcript. OK. Thank you, counsel. We appreciate your arguments in this case this morning. And with that, the case is submitted at this time. Thank you.
judges: Paez, Owens, England